_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
October 20, 2023

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. 20-12051-GS |
| | Chapter 7 |
| FRESH MIX LLC, | |
| | Adv. No. 22-01049-GS |
| Debtor(s). | |
| LENARD E. SCHWARTZER, TRUSTEE, | <u>Hearing Date</u> |
| | DATE: November 21, 2022 |
| Plaintiff(s), | TIME:  9:30 a.m. |
| v. | |
| PISANELLI BICE, PLLC; and GET FRESH SALES, INC., | |
| Defendant(s). | |

## <u>AMENDED MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT</u>

Plaintiff, chapter 7 trustee Lenard Schwartzer (Trustee), has moved for summary judgment on his cause of action to compel the turnover of legal records from defendant Pisanelli Bice, PLLC (PB). Adv. ECF No. 47. PB and defendant creditor Get Fresh Sales, Inc. (GFSI) oppose the motion for summary judgment and have cross and counter-moved for summary judgment. Adv. ECF Nos. 59 and 60. PB argues that it owns the legal files and

1

records created while representing the debtor Fresh Mix, LLC, and cannot be compelled to turn over documents that it owns. GFSI contends that the Trustee is precluded from pursuing any potential assets that might arise from PB's records, and, therefore, has no right to demand turnover of its legal files and records. The court disagrees, and for the reasons set forth in this memorandum will grant the Trustee's motion for summary judgment.

Typically, chapter 7 trustees routinely recover the debtor's legal files as part of their review of prepetition activities. *See generally, Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343 (1985). In this case, however, questions concerning the proper scope and use of the debtor's legal records have arisen since the filing of this action. After the court disallowed the late filed proof of claim filed by EITE Recovery, LLC (ECF No. 915), the court stayed this action (as well as motions to compel filed to recover other legal files). The court has since entered other orders continuing the stay of the adversary to permit further examination of these issues, which are intertwined with a pending appeal of the claim disallowance order. Adv. ECF Nos. 137, 138. In short, unless the disallowance of the claim is reversed on appeal the Trustee should be able to administer and close the estate without need to engage in the State Court Action (defined below). For the reasons previously expressed to the parties, the court has serious concerns that the bankruptcy is now being administered for the purposes of obtaining the debtor's legal records for the ultimate benefit of the minority owners who otherwise would be unable to obtain those records. To address these concerns, the court has also entered a protective order restricting the Trustee's use of the debtor's documents recovered from these law firms absent further court order. *See* ECF No. 1058.

**Facts**

**A.      Fresh Mix, the State Court Action, and the arbitration.**

The general business backgrounds of Fresh Mix and GFSI are well-established by the multiple pleadings filed by the parties in this matter and those facts are incorporated herein by

this reference for the sake of brevity. The court will focus its discussion instead on the specifics surrounding PB's pre-petition representation of the debtor and GFSI.

In 2017, GFSI on the one hand, as holder of 60% of Fresh Mix, and Todd Ponder and Paul Lagudi on the other, who together owned 40% of the debtor, were involved in a dispute regarding the ownership and control of the debtor. The dispute resulted in Fresh Mix terminating Lagudi as president of Fresh Mix on November 26, 2018. *See* Exhibit E, Adv. ECF No. 49-1 at 182.

On December 3, 2018, Lagudi and Ponder filed a complaint in Nevada District Court against GFSI and Fresh Mix alleging breach of the companies' operating agreement and sought to enjoin GFSI and Fresh Mix from removing Lagudi and Ponder as managers of Fresh Mix (State Court Action). Exhibit E, Adv. ECF No. 49-1 at 172-208. They alleged that Fresh Mix and GFSI breached Fresh Mix's operating agreement by removing them as managers of Fresh Mix. Lagudi and Ponder also sought to enjoin Fresh Mix and GFSI from removing them as managers of Fresh Mix or prohibiting them from managing its day to day operations. *Id*. Finally, they sought declaratory judgment that their covenants not to compete with Fresh Mix expired in 2015 and were no longer enforceable against them. *Id*. at 35.

On or about December 14, 2018, PB sent an engagement letter to Dominic Caldera, John Wise, and Scott Goldberg, the three managers and owners of Get Fresh, to outline its proposed representation of both GFSI and Fresh Mix. Exhibit B, Adv. ECF No. 49-1 at 7-11 (Engagement Agreement); *see also* Exhibit M, Adv. ECF No. 49-2, Transcript at 88:14-89:3. The opening sentence of the Engagement Agreement reads, "Thank you for asking Pisanelli Bice PLLC…to act as legal counsel for Get Fresh Sales, Inc. and Fresh Mix, LLC ("Get Fresh," "you" or the "Clients") concerning their interests in the litigation against Paul Lagudi and William Todd Ponder." *Id.* at 7. Among other things, the Engagement Agreement provided that "Get Fresh agrees that the work product of our attorneys and staff, including notes, research

3

and documents which we prepare, is property of the firm." *Id.* at 8. The Engagement Letter contained no details regarding the subject matter of the representation and did not identify any differences in the firm's representation of GFSI versus Fresh Mix, or discuss any potential conflicts. On December 18, 2018, Goldberg separately signed the Engagement Agreement on behalf of GFSI and Fresh Mix. *Id.* at 9.

The judge in the State Court Action compelled arbitration of certain claims, and on February 13, 2019, GFSI and Fresh Mix filed a demand for arbitration in the State Court Action. Exhibit I, Adv. ECF No. 49-1 at 287-396 (Arbitration Demand). Fresh Mix and GFSI asserted that Lagudi and Ponder breached fiduciary duties owed to them both as well as the terms of Fresh Mix's operating agreement. *Id.* at 314-16. Additionally, Fresh Mix claimed that Lagudi and Ponder breached their employment agreements with Fresh Mix and that Fresh Mix and GFSI were entitled to repurchase their membership interests. *Id*. at 316-19. Finally, Fresh Mix and GFSI alternatively sought damages for Lagudi and Ponder's unjust enrichment. *Id*. at 319-20.

Lagudi and Ponder asserted counterclaims in the arbitration against GFSI, Fresh Mix and others. The arbitration was stayed in January of 2020 in connection with a dispute over the use of a memorandum Goldberg had prepared in anticipation of litigation involving Lagudi and Ponder that the Nevada District Court held was privileged (Privileged Memorandum).

GFSI affiliate Fresh Investments paid the fees of the attorneys hired to represent GFSI and Fresh Mix in the State Court Action. *See* Exhibit M, Adv. ECF No. 49-2, Transcript at 53:15-18. Fresh Mix then reimbursed GFSI for fifty percent of the attorneys' fees and costs paid to PB. *Id.* The explanation for this reimbursement was described by Goldberg as follows:

> [O]nce the litigation started and Fresh Mix and Get Fresh were
> named, our legal counsels said it would be cost prohibitive to try to
> go through every line item on every bill and try to allocate every
> single charge from multiple law firms between the companies. And

> they recommended to me to just split at 50/50. And that's exactly
> what I did.

Exhibit T, Adv. ECF 49-2, Transcript at 14:4-10.[1] Subsequently, Goldberg clarified that all

attorneys were actually paid by the related entity Fresh Investments, which was funded by

GFSI. Exhibit M, Adv. ECF No. 49-2, Transcript at 53-54. Fresh Mix was later ordered to

indemnify GFSI for those fees paid. *Id.* at 53.

On April 23, 2020, GFSI filed an involuntary chapter 7 bankruptcy petition against

Fresh Mix. After considerable litigation, the order for relief was entered on August 11, 2020.

See Exhibit 7, Adv. ECF No. 62 at 137-40.

### B. The bankruptcy estate and the Trustee seek turnover of Fresh Mix's legal file from PB.

Lenard Schwartzer was appointed the chapter 7 trustee (Trustee) for Fresh Mix's

bankruptcy. Exhibit 3, Adv. ECF No. 62 at 12. On May 28, 2021, the Trustee's attorney sent

PB a letter demanding turnover under § 542 of Fresh Mix's legal file from the State Court

Action (Demand Letter). *See* Exhibit N, Adv. ECF No. 49-2 at 297-299.

On or about June 3, 2021, the Trustee received a response to its request for the turnover

of PB's legal file from GFSI's counsel, Schwartz Law PLLC, asserting multiple objections.

Exhibit O, Adv. ECF No. 49-2 at 301-302. Chiefly, GFSI asserted that "documents covered by

the Demand Letter will necessarily include Get Fresh's proprietary and privileged documents."

*Id.* at 302. After PB opposed the Trustee's motion to compel the turnover of PB's legal file and

requested that the Trustee pursue the client file via adversary proceeding, the court entered an

interim order setting deadlines for PB to provide the Trustee with a privilege log, as well as a

---

[1] The GFSI Managers' failure to differentiate between GFSI and Fresh Mix is a consistent theme running throughout this case. *See, e.g.,* Exhibit D, Adv. ECF No. 49-1, Transcript at 38:14-16 (Goldberg testifying that "the sales that occur on Get Fresh invoices are either split or a hundred percent either company."); 58:11-18 (GFSI counsel Sam Schwartz stating his understanding that that there are no written joint defense agreements, joint representation agreements, conflict disclosures, or conflict waivers relating to Fresh Mix); 70:7-8 (Goldberg testified that Get Fresh and Fresh Mix "shared" the defense of the State Court Action); Exhibit T, Adv. ECF No. 49-2, Transcript at 763:13-19 (Mr. Goldberg again stating that Fresh Mix customers would receive GFSI invoices and would pay GFSI).

listing of documents identified as Fresh Mix property and those which PB identified were not property of the estate. ECF No. 356.[2] On November 19, 2021, PB provided the Trustee with the lists required under the court's interim order. Exhibit P, Adv. ECF No. 49-2 at 304-789. The accompanying letter broke down the documents into four exhibits, or "buckets," as follows:

Bucket 1:   Files with PB that are the property of Fresh Mix and GFSI.

Bucket 2:   Files with PB that are related to the Privileged Memorandum and are not the property of Fresh Mix or are documents over which GFSI asserts a privilege.

Bucket 3:   Files with PB that are PB property but over which no privilege is asserted.

Bucket 4:   Files with PB that are PB property and work product.

*Id*. at 304-05. The Trustee alleges that the lists are incomplete, failing to account for emails reflected in PB's billing records and other parties' privilege logs. Adv. ECF No. 1 at 6:21-26; Adv. ECF No. 31 at 6:23-10:13.

On February 18, 2022, PB withdrew as counsel of record in the arbitration, and substituted out of the State Court Action. Exhibit J, Adv. ECF No. 49-1 at 398-402.

On March 10, 2022, the Trustee commenced this adversary proceeding with the filing of his complaint (Complaint) asserting three causes of action: turnover under § 542(a); turnover under § 542(e); and sanctions for failure to turn over client records under Nevada Revised Statutes (N.R.S.) § 7.055. The court granted GFSI's motion to intervene as co-defendant. Adv. ECF No. 19.

In an effort to comply with N.R.S. § 7.055, PB filed a motion to deposit the documents comprising buckets one through three with the Clerk of the Bankruptcy Court pending the outcome of the litigation. Adv. ECF No. 21. The court granted PB's motion over the objection of the Trustee. Adv. ECF No. 44. PB deposited the documents in buckets one through three with the Clerk of the Bankruptcy Court on September 15, 2022. Adv. ECF No. 46.

---

[2] The court takes judicial notice of the main case docket. Fed. R. Evid. 201(c).

Shortly thereafter, on September 20, 2022, the Trustee filed his motion for summary judgment (Trustee Motion). Adv. ECF No. 47. Both PB and GFSI filed counter motions for summary judgment. Adv. ECF Nos. 59 and 60 (PB Motion and GFSI Motion, respectively). PB asserts that the documents in bucket four are its property by virtue of the terms of the Engagement Agreement, and thus neither GFSI nor the debtor have any claim of ownership in those documents. In its motion, GFSI contends that the Trustee is precluded from seeking turnover of any documents from PB other than those identified in bucket 1 because the order for relief precludes the estate from asserting any claims against it.[3]

On November 21, 2022, the court heard oral argument on the dispositive motions. At the conclusion of the parties' arguments, the court took the dispositive motions under submission. As discussed previously, the court has stayed the motions to address concerns regarding the administration of the bankruptcy and the use of any documents turned over by Fresh Mix's former counsel. On September 26, 2023, the court denied any further stay of the Trustee's motion to compel turnover of the debtor's legal records from PB. Adv. ECF No. 160.

**Analysis**

**A.    Summary Judgment Standards**

Fed. R. Civ. P. 56(a), made applicable to this proceeding by Fed. R. Bankr. P. 7056, states that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To be entitled to judgment, the moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th

---

[3] The parties agreed on the record at a status conference held on September 22, 2022 that bucket one could be turned over to the Trustee. *See* Adv. ECF No. 104, Transcript at 5:11-12; 8:5.

Cir. 2000); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). If the non-moving party produces sufficient evidence of a genuine dispute of material fact, summary judgment is not proper. *See Tucson Electric Power Co. v. Pauwels Canada Inc.*, 651 Fed. App'x. 681, 682 (9th Cir. 2016) (*quoting Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)) ("The party opposing summary judgment bears the burden to 'produce some evidence, other than speculation or guesswork' sufficient to create a genuine dispute of material fact.").

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., et al*., 477 U.S. 242, 248 (1986). An issue is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Productions, Inc. v. Oskar, et al.*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-249). All disputed facts and inferences must be taken "in the light most favorable to the nonmoving party." *Joudeh v. Truppa (In re Truppa)*, 2017 WL 1533381, at *4 (B.A.P. 9th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**B.      There are no genuine disputes of material fact.**

The Trustee listed thirty-five facts in his statement of undisputed facts filed in conjunction with the Trustee's Motion. Adv. ECF No. 48. Both PB and GFSI filed statements of disputed facts in response. Adv. ECF Nos. 58 and 70, respectively. PB admits the majority of the facts presented by the Trustee; those few that are disputed are not "material" in the context of the summary judgment motions. GFSI's statement of disputed facts largely consists of evidentiary objections, with few facts actually disputed. To the extent relevant to the disposition of the summary judgment motions, the court overrules GFSI's evidentiary objections, and notes that PB has admitted a number of the facts that GFSI contests.

PB admits, but GFSI disputes, the Trustee's contention that: "The Engagement provides that PB would 'act as legal counsel for Get Fresh Sales, Inc. and Fresh Mix, LLC, collectively referred to as 'Get Fresh,' 'you' or the 'Clients'' concerning their interests in the litigation against Paul Lagudi and William Todd Ponder." Adv. ECF No. 48 at 2. GFSI asserts, based on the Declaration of Scott Goldberg at Adv. ECF No. 69, that PB was retained by GFSI in November 2018, and that Goldberg later "directed PB to expand its representation to include Fresh Mix for the limited purpose of ensuring the claims brought by Lagudi and Ponder were arbitrated and defending Fresh Mix from the claims brought against it by Lagudi and Ponder." Adv. ECF No. 70 at 3:1-11. Problematically for GFSI, the Engagement Agreement expressly states that GFSI requested that PB represent it and Fresh Mix. The letter fails to qualify or limit the representation of either GFSI or Fresh Mix. To the contrary, it subsumes both under the same name for purposes of engagement. Goldberg's declaration also confirms that PB was retained in November 2018 to represent GFSI in connection with the state court litigation brought by Lagudi and Ponder, and he further states that at the time PB was retained, he understood the interests of GFSI and Fresh Mix were aligned, and that PB would defend both GFSI and Fresh Mix in the state court litigation. Adv. ECF No. 69, ¶¶ 5-7. Accordingly, there is no genuine dispute that Goldberg retained PB to represent both GFSI and Fresh Mix, as reflected in the Engagement Agreement and as admitted by PB.

The only other material fact GFSI disputes concerns the first date PB billed services to GFSI and Fresh Mix. The Trustee contends that PB first billed for its services on November 19, 2018, prior to the date of the Engagement Agreement based on PB's billing statement submitted under seal. Adv. ECF No. 48, ¶ 8. PB admitted the fact in its response to the Trustee's statement of undisputed facts. Adv. ECF No. 58, ¶ 8. GFSI, however, disputes that PB first provided services to Fresh Mix beginning on November 19, 2018, and cites to paragraph 13 of the Goldberg declaration in support of the factual dispute. Paragraph 13 of the

Goldberg declaration discusses the Privileged Memorandum. Paragraph 14 stated: "From the outset of the litigation in December 2018 through late 2019, Get Fresh paid all legal bills from PB because the Get Fresh Principals were acting on behalf of Get Fresh, even when PB was defending Fresh Mix, and others, from inappropriate claims by Lagudi and Ponder." Adv. ECF No. 69, ¶ 14. While this sentence discusses the commencement of the litigation, it does not specifically address the date of commencement of PB's services for Fresh Mix and GFSI. Accordingly, GFSI has failed to provide evidence to establish a genuine dispute. Moreover, the dispute is limited to the timing of the representation and does not contest that PB represented both Fresh Mix and GFSI.

Counsel for PB conceded on the record at oral argument that he could not identify any genuine issues of material fact that would preclude entry of summary judgment in favor of the Trustee. Adv. ECF No. 130, Transcript at 33:3-16. In light of this concession, and the lack of any successfully controverted material facts raised by GFSI, the court concludes that there are no genuine issues of material fact which would preclude entry of summary judgment in favor of the Trustee.[4] Accordingly, the court will examine the Trustee's right to turnover of Fresh Mix's legal file as a matter of law.

### C.    Turnover Under 11 U.S.C. §§ 541(a) and 542(e)

The Trustee seeks turnover of Pisanelli Bice's client files generated in the course of its representation of the debtor as property of the estate under 11 U.S.C. § 541(a). Nevada law supports this request, providing "that the file amassed by an attorney in representing a client belongs to the client." *In re Hotels Nevada, LLC*, 458 B.R. 560, 567 (Bankr. D. Nev. 2011) (citing N.R.S. § 7.055). Moreover, "under the broad scope of § 541, even attorney notes and research memoranda that were prepared in representing the debtors are property of the estate."

---

[4] The court notes that GFSI also filed a statement of undisputed facts in conjunction with its cross motion for summary judgment. *See* Adv. ECF No. 61. The Trustee filed a responsive statement of disputed facts, raising challenges to a number of GFSI's statements of fact. *See* Adv. ECF No. 94. Because the court does not find any of the facts in GFSI's statement of undisputed facts material, it will not examine those facts in this decision.

*Id.* (citing *Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining Co.*, 442 B.R. 44, 47 (Bankr. D. Utah 2010)).

Section 542(e) further governs turnover of recorded information held by an attorney which is related to the debtor's property, as follows:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney…that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

"The question of privilege asserted in bankruptcy court is a procedural question and existing federal law is to be used." *Gottlieb v. Fayerman (In re Ginzburg)*, 517 B.R. 175, 182 (Bankr. C.D. Cal. 2014) (citing *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1022 (Bankr. S.D. Ga. 1998)); *see also Hotels Nevada*, 458 B.R. at 568.

In this instance, there is no genuine dispute that PB represented Fresh Mix in the litigation against Lagudi and Ponder. There is no privilege *between* that attorney and client that precludes turnover under § 542(e). As Judge Markell explained in the *Hotels Nevada* decision:

> Under the joint-client privilege, clients may jointly retain (or one client may retain for the joint benefit of others) an attorney as their common agent on a legal matter of common interest. With respect to matters of common interest, each joint client may be privy to the other's communications with the attorney without the attorney-client privilege protection being waived by that breach of confidentiality…. "The great caveat of the joint-client privilege is that it only protects communications from compelled disclosure to parties outside the joint representation. When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable.... This rule has two bases: (1) the presumed intent of the parties, and (2) the lawyer's fiduciary obligation of candor to both parties."

*Hotels Nevada,* 458 B.R. at 570-72 (quoting *Teleglobe USA Inc. v. BCE, Inc. (In re Teleglobe Communications Corp.)*, 493 F.3d 345, 366 (3d Cir. 2007)). However, as carefully stated in *Teleglobe*, the default rule applies only to "all communications made in the course of the joint representation." Otherwise stated, "the touchstone for compelling disclosure is whether the

11

communications are relevant to the matter of common interest that is the subject of the joint representation." *Newsome v. Lawson*, 286 F.Supp.3d 657, 667 (D. Del. 2017).

The parties do not dispute that PB's representation of GFSI and Fresh Mix was joint and not concurrent. In its opposition to the Trustee's motion, GFSI conceded as much: "There is no dispute that, as reflected in the PB engagement letter, PB was retained by Scott Goldberg on behalf of both Get Fresh – of which he is founder and co-owner - and Fresh Mix- of which Mr. Goldberg is a Manager and Get Fresh is a Member."[5] Adv. ECF No. 68 at 11:15-17; Adv. ECF No. 130, Transcript at 33:8-9 (MR. INFUSO: "We don't dispute the joint representation."). At the hearing on the dispositive motions, GFSI argued that the burden is on the Trustee to "establish the scope of the common interest that was the subject of the alleged joint representation." Adv. ECF No. 130, Transcript at 38:10-12.

Still, GFSI disputes the Trustee's right to turnover of all the legal files from the joint representation. It asserts its attorney client privilege as to those communications made to GFSI within the joint representation. N.R.S. § 49.115(5) addresses the attorney client privilege among joint clients and states that there is no privilege "[a]s to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." Similarly, the Restatement (Third) of the Law Governing Lawyers § 75(2) (2000) also provides that "[u]nless the co-clients have agreed otherwise, a communication described in Subsection (1) [subject to the attorney client privilege against third persons] is not privileged as between the co-clients in a subsequent adverse proceeding between them."

---

[5] GFSI appears to suggest that PB's representation of GFSI and Fresh Mix may not have been joint, but rather could be characterized as concurrent but separate. *See* Adv. ECF No. 68 at 12:12-14 ("Get Fresh does not dispute that for an undetermined amount of time PB represented Get Fresh and Fresh Mix concurrently in related matters."); Adv. ECF No. 130, Transcript at 37:13-16 (MR. AGELAKOPOULOS: "[T]here are at least the following genuine issues of material [fact]. What was the nature of the representation? Was it a joint representation, concurrent and separate? That has to be resolved."). However, this argument was never developed in GFSI's pleadings or at oral argument, so the court will not address it here.

1.    **The turnover of Fresh Mix's legal files is not precluded by entry of the order for relief.**

GFSI maintains that the attorney client privilege between it and the Fresh Mix estate did not terminate because the estate is precluded from being adverse to GFSI. It reasons that claim preclusion attached to the court's order for relief on its involuntary petition, which necessarily established that its underlying debt against Fresh Mix was not subject to a bona fide dispute and was a noncontingent, undisputed claim against the debtor as required under § 303(b). As a result, GFSI contends that the estate is barred from pursuing any claims or causes of action against it. Because of this, GFSI states that it can never be adverse to the estate for purposes of waiving the attorney client privilege under N.R.S. § 49.115(5) and the Restatement (Third) of the Law Governing Lawyers § 75(2).

Entry of the order for relief upon an involuntary petition under § 303 is a final, appealable order. *Mason v. Integrity Ins. Co. (In re Mason)*, 709 F.2d 1313, 1318 (9th Cir. 1983). As such it is entitled to preclusive effect on the matters finally decided as against the same parties or those in privity. *See generally id.* at 1316 ("An adjudication, and concomitantly an order for relief, is ... a conclusive determination of the debtor's status in bankruptcy, and *res judicata* between the *actual parties to the proceeding* to all the facts and subsidiary questions of law on which it is based.") [emphasis added]; *In re Mercury Data Systems, Inc.*, 586 B.R. 260, 266 (Bankr. E.D. Ky. 2018) (*debtor* who failed to contest the petitioning creditor's bad faith and dispute its claim was subject to claim preclusion absent relief under Fed. R. Civ. P. 60(b)).

Specifically, claim preclusion, or the doctrine of *res judicata,* under federal law requires proof that "the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (quoting *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005)). The burden of proving the elements of claim

preclusion rests with the party seeking to invoke the doctrine. *Id.* GFSI maintains that entry of the order for relief determined that its claim, as the sole petitioning creditor, was not subject to bona fide dispute as required under § 303(b)(1). The amount of a creditor's claim is a material issue in involuntary bankruptcy cases. A bona fide dispute as to the amount of the claim precludes it from serving "as a petitioning creditor under § 303(b)(1) even if a portion of the claim amount is undisputed."[6] *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1186 (9th Cir. 2019). Thus, any claims that might reduce or eliminate GFSI's debt through offset were properly within the litigation of the involuntary petition.

Admittedly, the Trustee's opposition to the application of claim preclusion is exceedingly light on analysis, but it does raise a critical point. The Trustee stated: "The involuntary petition (ECF No. 1 in main case) was filed by GFSI as a creditor (and member) of the Debtor. 11 U.S.C. § 303(b)(2). 11 USC §303(d) [sic] provides that the debtor may file an answer to the petition; while two managers sought permission to respond, the Court denied the request; the debtor did not file any answer." Adv. ECF No. 93 at 12:14-17. The record in the bankruptcy case is clear that the court denied Lagudi's and Ponder's efforts to intervene and to dismiss the bankruptcy case. ECF Nos. 59, 146.

GFSI properly notes that claim preclusion applies to bar relitigation of claims by the same parties or those in privity with the parties that previously litigated the prior suit. Adv. ECF No. 60 at 12 (citing *F.D.I.C. v. Jenson (In re Jenson)*, 980 F.2d 1254, 1256 (9th Cir. 1992); *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). It contends that the Trustee is bound by the order for relief because he was appointed "to preserve the property of the estate or prevent loss to the estate." 11 U.S.C. § 303(g). True, the court appointed an

---

[6] As explained in *In re Honolulu Affordable Hous. Partners, LLC*, 2015 WL 2203473, at *2 (Bankr. D. Hawai'i May 7, 2015) [citations omitted]: "In 2005, Congress amended section 303 by adding the phrase 'as to liability or amount' after the phrase 'bona fide dispute.' Therefore, the dispute can relate to liability on the claim or the amount of the claim, and not just the validity of the debt. This overrules prior decisions holding that the dispute about the amount of a claim disqualifies the petitioning creditor only if the undisputed portion of the claim is less than the statutory minimum amount."

interim chapter 7 trustee to assist it with the involuntary petition. Exhibits 2-3, Adv. ECF No. 62 at 9-12. This necessarily included analysis of whether GFSI held an undisputed claim against Fresh Mix. Exhibits 4-5, Adv. ECF No. 62 at 14-37. The Trustee was clear that state law claims and avoidance claims existed against GFSI, and if the case was placed into chapter 7 the Trustee would pursue them. Exhibit 5, Adv. ECF No. 62 at 35. But the Trustee also dutifully reported that no party *with standing* had contested the involuntary petition. *See id.* at 31. That being the case, the Trustee conceded that arguably the court was required to enter the order for relief under § 303(h). *Id.* at 18. Indeed, the court ultimately entered the order to permit the chapter 7 trustee to pursue the claims against GFSI. *See* Exhibit 7, Adv. ECF No. 62 at 137-40. The court never ruled on whether GFSI's claims were undisputed.

While the interim trustee was asked to assist the court, he did not have standing to object to the involuntary petition. Only the debtor had standing to contest the involuntary petition. 11 U.S.C. § 303(d); Fed. R. Bankr. P. 1011(a); *see also Mercury Data*, 586 B.R. at 270 (distinguishing lack of preclusive effect of order for relief as to bad faith sought by non-petitioning creditors "because they cannot contest an involuntary petition."). Thus, the interim trustee was not a party to the involuntary petition litigation for purposes of claim preclusion. GFSI does not develop the argument, but preclusion applies not only to the same parties in the prior litigation, but also those in privity with those parties. Privity is generally recognized to exist "where a person is 'adequately represented' in the prior action."[7] *In re Blanchard*, 547 B.R. 347, 354–55 (Bankr. C.D. Cal. 2016) (applying Nevada law and citing *Paradise Palms Cmty. Ass'n v. Paradise Homes,* 505 P.2d 596, 599 (1973) (citing Restatement (Second) of Judgments § 41(1) (1982)).

---

[7] Privity commonly exists between the majority shareholders or directors and the corporate entity they own or control. *Blanchard*, 547 B.R. at 354–55; *see also Continental Illinois Nat. Bank and Trust Co. of Chicago v. Windham,* 668 F. Supp. 578, 583 (E.D. Tex. 1987). But here GFSI is the majority shareholder in control and it seeks to bind the bankruptcy estate from administering the assets of the estate which were identified prior to entry of the order for relief.

Ordinarily, one would think that a putative bankruptcy debtor would want to contest the claims of a creditor petitioning to place it involuntarily into bankruptcy if the total amounts between the two parties were disputed. But this is not an ordinary case. Here, the majority shareholder that placed Fresh Mix into bankruptcy seeks to preclude the Trustee from litigating claims against it because it chose not to challenge its own claim despite a pending State Court Action and arbitration, as well as the transfer of considerable money from Fresh Mix to GFSI shortly before the bankruptcy. Moreover, GFSI, as the sole petitioning creditor, filed the involuntary bankruptcy though it was clearly a statutory insider.[8] 11 U.S.C. §§ 101(31)(B)(iii) and (E). The Bankruptcy Code precludes insiders from serving as the lone petitioning creditor on an involuntary petition. 11 U.S.C. § 303(b)(2). Now GFSI argues that claim preclusion attached to bar any claims *the estate* may have against it, though the court placed the debtor into bankruptcy to administer those very claims. The court disagrees that Fresh Mix, controlled by GFSI, was the same party or in privity with the Trustee for purposes of contesting the involuntary petition. At the risk of understatement, Fresh Mix, controlled by GFSI, did not adequately represent the estate's interests. *See generally Williams v. Marlar (In re Marlar),* 246 B.R. 606, 611 (Bankr. W.D. Ark. 2000), *aff'd,* 252 B.R. 743 (B.A.P. 8th Cir. 2000), *aff'd,* 267 F.3d 749 (8th Cir. 2001) ("[T]he chapter 7 trustee, the general representative of all creditors, may not be bound by collateral estoppel or *res judicata* to the prior state court proceedings, *see Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693 (6th Cir. 1999), even if the state court's decision to dismiss Paula Davis' fraudulent transfer action is affirmed.").

---

[8] Although Fresh Mix is a limited liability company, § 101(9)(A)(4) defines a "corporation" to include an unincorporated company or association, such as a limited liability company. *In re Rexford Properties, LLC*, 557 B.R. 788, 794 n.6 (Bankr. C.D. Cal. 2016) (citing *The Vill. at Lakeridge, LLC v. U.S. Bank N.A. (In re The Vill. at Lakeridge, LLC)*, 2013 WL 1397447, at *4 n.8 (B.A.P. 9th Cir. Apr. 5, 2013), *aff'd sub nom. In re The Vill. at Lakeridge, LLC*, 814 F.3d 993 (9th Cir. 2016), and *aff'd sub nom. In re The Vill. at Lakeridge, LLC*, 634 Fed.Appx. 619 (9th Cir. 2016)); *see also Sherron Assocs. Loan Fund XXI (Lacey) L.L.C. v. Thomas (In re Parks)*, 503 B.R. 820, 829 (Bankr. W.D. Wash. 2013) ("L.L.C.s fall within the 'corporation' definition of § 101(9)….").

The Restatement incorporates this very concept as well. Section 42(1)(e) of the Restatement (Second) of Judgments (1982) provides exceptions to privity for purposes of applying preclusion. It provides that "A person is not bound by a judgment for or against a party who purports to represent him if: ... The representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." Despite the State Court Action filed by Lagudi and Ponder against GFSI, Fresh Mix chose not to dispute the claims of its majority shareholder. The court is hard pressed to think of a situation which better illustrates where the "representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." GFSI may not take advantage of its self-interested decision not to dispute its own claim made as the controlling member of Fresh Mix. The court concludes that the Trustee was not the same party or in privity with the party that chose not to contest GFSI's debt at the inception of the involuntary case.

Second, and perhaps foremost, the court long ago terminated the automatic stay to permit the estate to arbitrate its state law claims against GFSI. This was done pursuant to the parties' own stipulation. *See* ECF Nos. 435, 437. The parties have substantially engaged in the arbitration and it is set for hearing in early 2024. *See* ECF No. 1023, Transcript at 31:18 (MR. EISENBERG: "The arbitration is going forward in February."). The parties are, and have been, substantially adverse for years post-petition. The court fails to see how this could be anything but waiver of any defense of claim preclusion that may possibly have arisen from the entry of the order for relief. *See In re Associated Vintage Grp., Inc*., 283 B.R. 549, 563 (B.A.P. 9th Cir. 2002) ("[T]he affirmative defense of claim preclusion is waived if not timely raised, which is another way of saying that the defendant has acquiesced."). The court rejects any manufactured argument that the parties are not actually adverse.

17

Caldera, Wise, and Goldberg are GFSI, and they were effectively Fresh Mix prior to the bankruptcy. They controlled Fresh Mix until the appointment of the chapter 7 trustee upon entry of the order for relief. They controlled Lagudi's termination and the prepetition litigation – whether viewed from the vantage point of GFSI or Fresh Mix. They also elected as GFSI to place Fresh Mix into an involuntary bankruptcy, and then chose not to contest that bankruptcy *as Fresh Mix*. Significantly, there is no evidence that any discussions between PB and either Caldera, Wise, or Goldberg distinguished the representation of GFSI from Fresh Mix as to the litigation with Lagudi and Ponder. Nor does it appear that PB did so. Necessarily, this means that GFSI and Fresh Mix, acting through Caldera, Wise and Goldberg, participated in both clients' communications with PB for the same purpose. There simply was no ability by the individuals representing both entities to distinguish between the clients. And there is no evidence that Caldera, Wise or Goldberg ever attempted to do so. Instead, they treated the two entities as the same, such that representation of one entity by counsel could only result in joint representation of the other entity. *See* Restatement (Third) of the Law Governing Lawyers § 75(2); N.R.S. § 49.115(5); *see also, e.g., All. Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, 2015 WL 1565729, at **7-8 (E.D. Pa. Apr. 8, 2015) (concluding that the attorney client privilege did not protect communications by jointly-represented brothers regarding closely-held companies they controlled, where the court concluded there was "ample evidence in the record that [the brothers] were not scrupulous about respecting corporate formalities, including emails sent to counsel from corporate email accounts, the fact that [the company] paid [the brothers'] legal bill, testimony that [the company] reimbursed [a brother] for his payment of…legal expenses, and the involvement of…other [company] employees in communications with the lawyers."). Though GFSI may now generally raise the specter of concurrent representation in an attempt to limit the scope of PB's representation of Fresh Mix and any associated legal files, there is nothing in the record to support such an argument. The evidence is clear that no such

18

distinctions were made in PB's joint representation of Fresh Mix and GFSI, or that GFSI separately retained PB for any matter involving the litigation.

For these reasons, because the Trustee stands in a position adverse to GFSI in this proceeding, N.R.S. § 49.115(5) applies to except from the attorney client privilege any "communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." GFSI's attempt to invoke the attorney client privilege, even if it applied, is thus ineffective.

### 2.    Work Product Doctrine

Without addressing it in detail in any of its briefing or at oral argument, GFSI repeatedly asserts that the Trustee is not entitled to possession of the documents he seeks from PB because those documents are subject to the work product doctrine. *See, e.g.,* Adv. ECF No. 60 at 11:2-4 ("Get Fresh has continuously asserted the turnover of documents the Trustee seeks and that have not already been turned over to the Trustee is barred by the attorney-client privilege and work product doctrine in accordance with 11 U.S.C. § 542(e)."). "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989). The work product doctrine "protects 'the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'" *Hotels Nevada*, 458 B.R. at 577 n.16 (quoting Fed. R. Civ. P. 26(b)(3)). Importantly, "[t]o qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared '*by or for another party or by or for that other party's representative.*'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004))

[emphasis added]; *see also U.S. v. Nobles*, 422 U.S. 225, 236 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (noting that the purpose of the work product doctrine is to protect an attorney's work product from "opposing parties and their counsel": "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten."); *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2017 WL 2292818, at *6 (D. Nev. May 25, 2017) (quoting *California Sportfishing Protection Alliance v. Chico Scrap Metal*, 299 F.R.D. 638, 645 (E.D. Cal. 2014)) ("'[T]he purpose of the work product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials.'"); *U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd.*, 2013 WL 1249692, at *4 (D. Nev. Mar. 26, 2013) ("The work product doctrine provides a broader protection than the attorney-client privilege and is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent *adversary* attorney from taking undue advantage of the former's efforts.") [emphasis added].

The Trustee now stands in the shoes of Fresh Mix. Fresh Mix and GFSI were jointly represented by PB without distinction as to the Lagudi and Ponder litigation. The materials produced by PB over which GFSI asserts the work product immunity were not "prepared by or for another party or by or for that other party's representative" *vis a vis* the Trustee because the materials were prepared for GFSI and Fresh Mix without any differentiation within their joint representation. Accordingly, GFSI may not invoke the work product immunity to bar the Trustee's access to Fresh Mix's materials prepared by its own counsel.

### 3.    Ownership of the Client File

PB argues that the documents in bucket four are its exclusive property in accordance with the terms of its Engagement Agreement. It maintains that neither GFSI nor Fresh Mix have any claim of ownership to those documents. Instead, PB contends that the unambiguous

terms of its Engagement Agreement control, and the Trustee has presented no authority which requires its contractual terms to be overridden.

As stated above, the Engagement Agreement expressly provides, "Get Fresh agrees that the work product of our attorneys and staff, including notes, research, and documents which we prepare, is the property of the firm." Exhibit B, Adv. ECF No. 49-1 at 8. At oral argument, PB explained that the provision in its Engagement Agreement governing ownership of the firm's work product served to carve out a non-exhaustive list of materials that are the firm's property and thus are not part of the "client file" required to be turned over under N.R.S. § 7.055. *See* Adv. ECF No. 130, Transcript at 25:5-25. The court disagrees. Ultimately, ownership is not material to turnover. Whether PB "owns" the files or not, it must provide the client with its records. As Judge Markell found in *Hotels Nevada,* discussed above, "Nevada law provides that the file amassed by an attorney in representing a client belongs to the client." *Hotels Nevada*, 458 B.R. at 567. This derives from N.R.S. § 7.055. Subsection (a) unequivocally provides: "[a]n attorney who has been discharged by his or her client shall, upon demand and payment of the fee due from the client, immediately deliver to the client all papers document, pleadings and items of tangible personal property which belong to or were prepared for that client." N.R.S. § 7.055(a). There is nothing in the statute that suggests an attorney may contract around this affirmative obligation.

The court also finds that PB's position is contrary to the fiduciary duties owed by a lawyer to his or her client. "The duties that a lawyer owes her client also flow from this understanding of what it means to a be a 'professional'—that a lawyer's superior knowledge and training place clients in a position of trust and dependence such that the lawyer has obligations to individual clients beyond that of two equal parties to a transaction or contract. Instead, a lawyer is a fiduciary that owes the duties of candor, good faith, trust, and care to a client." *In re Seare*, 493 B.R. 158, 182 (Bankr. D. Nev. 2013), *as corrected* (Apr. 10, 2013),

*aff'd*, 515 B.R. 599 (B.A.P. 9th Cir. 2014); *see also Hotels Nevada*, 458 B.R. at 573 ("[T]he attorney is simply an agent of the client…."). It is hard to reconcile this fiduciary duty with a claim of ownership over a client's files. PB's claim of ownership over its client's files also flies in the face of well-established rules and guidelines. *See, e.g.,* Restatement (Third) of the Law Governing Lawyers § 46(2) (2000) ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse."); N.R.S. § 18.015(4)(b) (authorizing an attorney to retain a client's file only until it has been paid in full). As such, PB's attempt to contract around the debtor's right to its entire client file, even for the stated purpose of limiting the amount of material it must retain after its representation is concluded, strikes this court as violative of the duties PB owes its clients.

        Further, at least one court considering an argument similar to PB's has found that turnover under § 542(e) is appropriate regardless of whether the law firm or the client owns the documents in question. In *In re Black Diamond Mining Co.*, the court considered a motion[9] for turnover under § 542(e) brought by the trustee of the chapter 11 liquidating trust, seeking to obtain the debtor's legal file from its chapter 11 counsel. Under § 542(e),

> the Court can avoid wading into the thorny debate over precisely who owns the client file. To be subject to turnover under § 542(e), documents and records need not actually belong to the debtor; they need only relate to the debtor's property or financial affairs. And that property includes intangible interests such as causes of action. [The debtor's] outstanding claims against its former officers…are thus its property. As such, [counsel's] client file on [the debtor] "relate[s] to" the company's property within the meaning of § 542(e) because the records and intra-firm correspondence it contains are relevant to those claims.

*McKinstry v. Genser (In re Black Diamond Min. Co., LLC)*, 507 B.R. 209, 214–15 (E.D. Ky. 2014) [citations omitted]; *see also Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 419 (6th Cir. 2013) ("[A]n action for turnover under § 542(e) does

---

[9] The court in *Black Diamond Mining* acknowledged that the trustee's request for turnover should have been sought via an adversary proceeding, but that the procedural requirement could be waived by the parties. *See Black Diamond Mining*, 507 B.R. at 213, n.9.

not require that the information be property of the estate."); *In re Xiang Yong Gao*, 2017 WL 2544132, at *3 (Bankr. E.D.N.Y. June 12, 2017); *Wagner v. Dreskin (In re Vaughan Co.)*, 2015 WL 4498748, at *5 (Bankr. D. N.M. July 23, 2015); *In re Crescent Res., LLC*, 457 B.R. 506, 513 (Bankr. W.D. Tex. 2011); *American Metrocomm Corp. v. Duane Morris & Heckscher LLP, et al. (In re American Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002).

The United States Supreme Court, in examining § 542(e), concluded that "the legislative history establishes that § 542(e) was intended to restrict, not expand, the ability of accountants and attorneys to withhold information from the trustee." *Weintraub*, 471 U.S. at 351. The holding in *Black Diamond Mining* is consistent not only with the literal wording of the statute, which does not reflect an ownership requirement, but also with the overarching Congressional purpose behind the statute.

Here, the Trustee seeks the PB client file because "the Trustee is investigating potential claims against the GFSI parties and the co-client counsel for various breaches." Adv. ECF No. 47 at 20:16-17. These claims are the types of intangible property, like the claims in *Black Diamond Mining*, that constitute property of the debtor's estate. The description of the materials in bucket four includes drafts of pleadings and motions, correspondence, discovery, drafts and working documents related to the AAA Arbitration, and emails "internal, w/ counsel, w/client representatives." Adv. ECF No. 49-2 at 587. Accordingly, "[a]s such, [counsel's] client file on [the debtor] 'relate[s] to' the company's property within the meaning of § 542(e) because the records and intra-firm correspondence it contains are relevant to those claims." *Black Diamond*, 507 B.R. at 215.

### D.    Sanctions Under N.R.S. § 7.055

The Trustee requests that the court sanction PB under N.R.S. § 7.055(2) for its failure to produce the documents requested.  That statutory provision provides:

> A client who, after demand therefor and payment of the fee due
> from the client, does not receive from his or her discharged

attorney all papers, documents, pleadings and items of tangible personal property may, by a motion filed after at least 5 days' notice to the attorney, obtain an order for the production of his or her papers, documents, pleadings and other property. If court finds that an attorney has, without just cause, refused or neglected to obey its order given under this section, the court may, after notice and hearing, adjudge the attorney guilty of contempt and may fine or imprison him or her until the contempt is purged. If the court finds that the attorney has, without just cause, withheld the client's papers, documents, pleadings or other property, the attorney is liable for costs and attorney's fees.

Under the statute's own terms, contempt sanctions are only appropriate *after* the court enters an order directing an attorney to produce a former client's "papers, documents, pleadings and other property." The order to be issued concurrently with this memorandum decision will constitute such an order. Accordingly, the Trustee's request for the imposition of sanctions under N.R.S. § 7.055(2) is premature.

### Conclusion

The court, construing the evidence in the light most favorable to the non-movants, has concluded that the Trustee has demonstrated there are no genuine issues of material fact in dispute, and he is entitled to judgment as a matter of law to turnover of Fresh Mix's client file by PB, subject to the protective order previously entered restricting the dissemination of the materials disclosed to the Trustee absent further order of the court.

For the reasons stated, the court will enter an order granting the Trustee's Motion and denying PB's and GFSI's Motions.

IT IS SO ORDERED.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #